### In re DAKOTA G.

### No. 2003–535–Appeal.

Supreme Court of Rhode Island.

April 14, 2006.

Paula Rosin, Providence.

Karen Clark, Providence.

Frank P. Iacono, Jr.

### O R D E R

The respondent mother, Pamela G., appeals from a Family Court decree terminating her parental rights with respect to her son, Dakota, who was born on January 7, 2000.[1] The respondent's parental rights were terminated on April 30, 2003, on two separate grounds, namely (1) that Dakota had been in the legal custody or care of the Department of Children, Youth and Families (DCYF) for at least twelve months, the respondent was offered and received services to correct the situation leading to placement, and there was not a substantial probability that Dakota would be able to return safely to his mother's care within a reasonable period of time[2] and (2) that the Family Court had previously involuntarily terminated the respondent's parental rights with respect to another child.[3]

---

1. The parental rights of Dakota's father were involuntarily terminated by the Family Court on January 14, 2003. That termination is not before us on this appeal.

2. See G.L.1956 § 15–7–7(a)(3).

3. See § 15–7–7(a)(2)(iv). The respondent's parental rights with respect to her daughter, Amy, were involuntarily terminated by the Family Court on April 17, 1991.

Dakota, a developmentally delayed child, first came into the care of DCYF following a hotline call from a justice of the Family Court indicating that respondent, whom the justice recognized as a person who had previously been involved with DCYF, had a young child in her care.[4] According to Florencegail Ryan, the DCYF caseworker assigned to the case, respondent had a long history of substance abuse, a previous involuntary termination as to another child, parenting skill issues, and possible mental health issues. On May 11, 2001, the Family Court granted DCYF temporary custody of Dakota.

Ms. Ryan referred respondent to numerous services, including psychological evaluation, the CODAC substance abuse treatment program, the parenting assistance offered by St. Mary's Home for Children, and the Families Together Program at the Children's Museum. Ms. Ryan also prepared several reunification case plans. The Family Court issued two decrees which provided that respondent would be reunified with Dakota if she complied with certain conditions, including the provision of random clean urine screens. However, reunification never occurred pursuant to those decrees because respondent had positive urine screens for cocaine, both of which occurred before reunification was to take place.

On April 16, 2002, respondent admitted to neglect; and, pursuant to a Family Court decree, Dakota was committed to the care, custody, and control of DCYF. This decree, which adopted a reunification case plan that had been established by DCYF, ordered respondent (1) to engage in a neuro-psychological evaluation, (2) to cooperate with all components of the CODAC program, including the provision of random clean urine screens, and (3) to cooperate with a parent-child evaluation. The decree provided that, if respondent strictly complied with all of these conditions, she would be reunified with Dakota on July 30, 2002. However, respondent failed to appear for her random urine screens on May 13, May 28, June 24, and June 26; and on both June 19 and June 20 respondent's random urine screens tested positive for cocaine.

The DCYF filed a petition with the Family Court seeking the involuntarily termination of respondent's parental rights with respect to her son, Dakota. Following a trial in Family Court, the judge found by clear and convincing evidence that respondent was unfit to parent Dakota and, further, that it was in the best interests of Dakota that his mother's parental rights be terminated.

Our review of cases involving the termination of parental rights is limited to determining whether the record contains legally competent evidence to support the findings of the trial justice. *In re Unique T.*, 822 A.2d 182, 183 (R.I.2003). We will not disturb the trial justice's decision on appeal unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong. *Id.*

Our review of the record in the present case indicates that there is legally competent evidence to support the trial justice's findings with regard to the termination of respondent's parental rights pursuant to G.L.1956 § 15-7-7(a)(3). It is clear that, by the time the petition for termination was filed, Dakota had been in the custody of DCYF for more than twelve months and respondent had been offered and received numerous services to correct the situation

---

4. The Family Court justice placed this call to the hotline after respondent appeared in her courtroom with a person who was "red-flagged" by DCYF as a sexual perpetrator with respect to children.

which led to the placement of Dakota. Moreover, there is evidence in the record to support the trial justice's conclusion that respondent lacked the ability or the willingness to avail herself sufficiently of the services arranged by DCYF and that an additional continuation of such services was unlikely to lead to reunification within a reasonable period of time considering Dakota's age and his need for a permanent home.

Specifically, the record in this case reveals that respondent lacked the ability or the willingness to respond to the substance abuse treatment arranged by DCYF. Although respondent was ultimately discharged from the CODAC program "successfully" (according to that program's standards), she continually missed counseling sessions and provided numerous positive urine screens for cocaine, which prevented reunification with Dakota on three occasions. Furthermore, the information provided by CODAC indicates that respondent was unwilling to admit to the fact that she used drugs—which, in that agency's opinion, rendered substance abuse counseling ineffective. Cathy LaSalle, an expert in substance abuse counseling who is employed by CODAC, testified about respondent's unwillingness to take responsibility for her positive drug screens and about respondent's claiming that CODAC and DCYF were conspiring against her.

In addition, the evidence in this case indicates that respondent failed to comply with other services offered by DCYF. The Families Together Program at the Children's Museum terminated its involvement with respondent because of her inconsistent visitation and her positive urine screens. Moreover, respondent refused to follow the recommendation of the program's facilitators that she attend parenting classes. Similarly, although respondent did largely comply with the visitation portion of the St. Mary's Home program, she did not follow through with the parental education component of that program. The respondent also delayed in cooperating with the psychological evaluation to which DCYF referred her; and, when she did finally participate in the evaluation, Dr. John P. Parsons, the psychologist who performed the evaluation, actually recommended that DCYF file a petition for termination of parental rights.

Based upon the evidence in his case, we conclude there was not a substantial probability that Dakota would be able to return safely to his mother's care within a reasonable period of time. Because we find that there is legally competent evidence in the record to support the trial justice's decision to terminate the respondent's parental rights under § 15–7–7(a)(3), it is not necessary for us to address the alternative ground for termination that is cited in the trial justice's decision. After reviewing the record in this case, we are convinced that the trial justice did not overlook or misconceive material evidence and was not otherwise clearly wrong in determining that the respondent was unfit to parent Dakota and that it was in the best interests of Dakota that his mother's parental rights be terminated.

Accordingly, we affirm the decree of the Family Court. The papers in this case may be remanded to the Family Court.

Justice SUTTELL did not participate.